Robert Lynn MORRIS, Appellant,

v.

STATE of Missouri, Respondent.

No. 54808.

Supreme Court of Missouri,
Division No. 1.

July 13, 1970.

Daniel V. O'Brien, Stephen H. Gilmore, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

By motion under Supreme Court Rule 27.26, V.A.M.R., petitioner, Robert Lynn Morris, sought to set aside a judgment of conviction and sentence to life imprisonment for rape, entered upon plea of guilty. Following an evidentiary hearing, the trial court denied relief. Petitioner appealed.

The offense involved occurred on July 23, 1963, in St. Francois County. The information charged forcible rape of a 15-year-old girl, a capital offense. § 559.260, RSMo 1959, V.A.M.S. Morris was arrested on July 24 and on July 25, 1963, entered a plea of guilty to the charge and was on that date sentenced to life imprisonment.

The claim to relief is based upon the allegation that at the time of his plea of guilty defendant was not represented by coun-

sel and that he had not knowingly and intelligently waived such right. The evidence on this issue included the transcript of the proceedings upon entry of the plea, the testimony of the then prosecuting attorney, of the petitioner and the petitioner's mother. Relevant portions of the transcript were as follows:

"BY THE COURT: You are Robert Morris? A Yes, sir.

Q How old are you? A Twenty-seven.

Q Now, you are charged here with a crime for which if found guilty you can be sentenced to the penitentiary for life; are you aware of that? A Yes, sir.

Q Do you have a lawyer representing you? A No, sir.

Q Do you want a lawyer to represent you? A No, sir.

Q Do you understand that if you had a lawyer he would advise you whether or not the papers charging this crime against you are in proper form; he would determine whether or not you should plead guilty or stand trial; you understand those things? A Yes, sir.

Q And understanding them you are willing to waive having an attorney represent you? A Yes, sir.

Q I understand and I do believe that your parents live in this county? A Yes.

Q Do they know that you have been charged with a crime? A Yes.

Q Have you discussed with them whether or not you should appear without an attorney? A No, sir."

A discussion of the facts of the offense ensued with petitioner's supplying information and assenting to facts related by the court.

"BY MR. HYLER: Let me ask one more question.

BY THE COURT: All right.

BY MR. HYLER: Have you been in Service? A Yes, sir.

Q How long were you in service? A A little over three years.

Q Have you been in the penitentiary previously? A No, sir. I was in the Reformatory.

Q And where was this? A Hutchinson, Kansas.

Q And what was this for? A Writin' checks.

Q And how long were you in? A Ten months and twenty-seven days. One to five years.

BY THE COURT: When did you get out? A In '58.

Q Had you been in the Army before? A Yes.

Q You were in the Army before. Anything further, Mr. Hyler?

BY MR. HYLER: I have nothing further.

BY THE COURT: Robert Morris, have you any reason to give this Court or good cause to be shown why sentence should not now be pronounced upon you in accordance with your plea of guilty to the charge of forcible rape? A No, sir.

Q Then it is the sentence and judgment of the Court that you be taken by the Sheriff of this County to the City of Jefferson and there delivered to the State Board of Criminal Correction and by that Board detained for the rest of your natural life. You may sit down or go with the Sheriff."

Mr. Hyler, called as a witness on behalf of the petitioner, testified that he thought that he took a statement from the petitioner, although none could be found in the file on the case. Mr. Hyler said that he

was "sure" that he "advised him of the rights in connection with counsel." Mr. Hyler testified that he was in the magistrate court when petitioner waived preliminary hearing. In response to the question as to whether he or the magistrate judge advised petitioner that counsel could be appointed for him, the witness replied:

"I don't believe so. But I, I do know that Judge Rentfro, in every case, advises the individual that they have the right to see counsel and to consult with his friends as to what action he wants to take in connection with a preliminary hearing."

The petitioner testified that he had been drinking for approximately two weeks before the occurrence and that he could recall nothing that happened in either the magistrate or the circuit court. He testified that he did ask Mr. Hyler for an attorney and that Hyler left the room and said he'd see if he could find one; when he came back he said "there wasn't none in the building." Hyler denied that any such request was made.

Appellant's mother testified that she lived in St. Francois County at the time of her son's arrest. She testified:

" * * * See, he was arrested on a Tuesday night and I knowed it the next day. Then I, I called down to the jail to find out whether they would let me come down there and bring him some clean clothes and a razor and things so he could shave, and that was the third day. He was arrested on Tuesday night and it was Thursday that I, I called down there, and they said * * * that he had been sentenced, already tried and sentenced and they was just ready to leave with him, and I said, 'Why wasn't we notified?' and they said they didn't know, said, 'I don't know anything about that, you'll have to ask the judge.' "

At the conclusion of the hearing, the trial court contrasted petitioner's testimony with the transcript of the arraignment proceedings and concluded:

"Now, I just can't believe this boy, this young man, when he comes in here and says today that he didn't remember what happened that day with all those questions and answers and explanations made, and his appearance that day was just as good as it is today. I'll be glad to have a motion, if you want, on a rehearing, but there has been insufficient evidence to sustain his petition and the petition will be denied."

Among the court's formal findings of fact were the following:

"3. That prior to the reading of the formal charge against Robert Lynn Morris on July 25th, 1969 it was established that he was then 27 years of age; that he was informed that if he was found guilty of the charge that he could be sentenced to life imprisonment; that he stated that he did not want a lawyer to represent him; that it was explained to him what a lawyer would do in his behalf; that he waived having an attorney and that his parents resided in St. Francois County, Missouri and knew that he was charged with a crime.

"That the formal charges were read to him and that he pleaded guilty and he related to the Court the incidents preceding the actual assault and the facts of the assault; that these statements were made voluntarily, were true and followed his plea of guilty. That petitioner had a prior criminal record in the State of Kansas; that he was afforded allocution and formally sentenced to life imprisonment.

"4. That at the evidentiary hearing June 6th, 1969 there was no evidence that petitioner involuntarily waived counsel; that there was no evidence that at the time of sentencing that he was mentally incompetent as a result of acute alcoholism or for any other reason; that there was no evidence that he was in any wise coerced or falsely promised anything by the then Prosecuting Attorney and that there was no evidence that at the time of pleading guilty he was in a state of shock or that he had attempted suicide."

The court's first conclusion of law was:

"1. That on July 25, 1963 petitioner Robert Lynn Morris was mentally competent and that he voluntarily, intelligently and with full knowledge of his rights waived having counsel represent him when he entered a plea of guilty in the Circuit Court of St. Francois County, Missouri."

■ On this appeal, appellant asserts that the trial court's conclusion that he intelligently waived his right to counsel is clearly erroneous and that he was denied the right to counsel in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States. The right asserted being one based upon the federal constitution, we must determine the question according to federal standards. The brief of neither the appellant nor of the state is particularly helpful in demonstrating the federal standards involved. Despite the rather large volume of federal law on this subject, appellant has seen fit to rely primarily upon state cases and upon not directly applicable federal authority, such as Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418. The state relies upon the failure of the appellant to sustain his burden of proof (Crosswhite v. State, Mo., 426 S.W.2d 67), upon distinguishing appellant's authority, and upon Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461, as the sole authority for sustaining the effectiveness of appellant's waiver of counsel.

We do have the benefit of a recent exposition of the approach of the United States District Court for the Western District of Missouri to the problem here presented. In Meller v. Swenson, 309 F.Supp. 519, one of the contentions of the petitioner in a habeas corpus proceeding was that the plea of guilty was entered in a Missouri circuit court without the assistance of counsel and without the benefit of advice by the court of the right to have counsel appointed. This court had rejected the contention

in Meller v. State, Mo.Sup., 438 S.W.2d 187. In passing on the question, the Federal Court said (309 F.Supp. 524):

"When, in a postconviction review, absence of a fundamental federal constitutional right, such as trial by jury or assistance of counsel, appears in a federal or state conviction of a serious offense, the burden of producing evidence of voluntary and understanding waiver of the right shifts to the state or United States. Carnley v. Cochran [369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70], supra; United States ex rel. Savini v. Jackson (C.A.2) 250 F.2d 349; Rimanich v. United States (C.A.5) 357 F. 2d 537; Lane v. United States (C.A.5) 373 F.2d 570; Caffey v. Swenson (W.D.Mo.) 298 F.Supp. 994 1. c. 998; Pedicord v. Swenson (W.D.Mo.) Part III, 304 F.Supp. 393 (not yet reported). Failure of the state to produce evidence of waiver would result in a decision in favor of petitioner. Mosley v. Dutton (C.A.5) 367 F.2d 913. The risk of non-persuasion remained on the petitioner. Carnley v. Cochran, supra. Thus, to be consistent with Missouri Criminal Rule 27.26 and current federal standards, 'burden of proof,' as used by the Missouri Supreme Court, must mean the risk of non-persuasion. The federal standard is that, once the defendant has shown that he has not been accorded a constitutional right (such as the right to a trial by jury), the burden of going forward with evidence of waiver falls upon the prosecution. Carnley v. Cochran, supra; United States ex rel. Savini v. Jackson, supra; Rimanich v. United States, supra; Lane v. United States, supra; Caffey v. Swenson, supra; Pedicord v. Swenson, supra. This burden of going forward with producing evidence of waiver was met by the state's production of evidence of waiver in the postconviction proceedings. Thereupon, the burden fell upon petitioner to prove by a preponderance of the evidence that the waiver was involuntary or unintelligent or lacking in understanding by petitioner."

■ Thus, in the present case, if we are to apply the controlling federal stand-

ards, the unquestioned absence of counsel at movant's plea and sentencing placed upon the state the burden of coming forward with evidence of waiver. The state must rely upon the record at the plea and sentencing to satisfy its burden. No oral testimony of either the prosecutor or the petitioner was of assistance to the state on this issue. The petitioner did produce his oral testimony that he could not recall the proceedings. The court rejected the testimony. However, if the state's evidence was inadequate to demonstrate that the waiver was knowing and understanding, the state has failed in its burden and there is no basis for a finding of knowing and intelligent waiver. United States ex rel. Brown v. Fay, D.C.S.D.N.Y., 242 F.Supp. 273, 276 [3, 4].

 Waiver of right to counsel is knowing and intelligent only if the prisoner is either informed or is shown to know of the right to the appointment of counsel at public expense if he is unable to employ counsel. Nielsen v. Turner, D.C.Utah, 287 F.Supp. 116, 123 [6–9]. No such advice was given appellant. He was not shown to have known of such right. See Dyett v. Turner, D.C.Utah, 287 F.Supp. 113. His prior brush with the law would be a factor to be considered, but, standing alone, would be insufficient to warrant an inference of adequate knowledge to support a waiver. Shawan v. Cox, 10th Cir., 350 F.2d 909, 912 [7, 8].

 In addition, the court's explanation of the role of a lawyer was woefully inadequate. A lawyer who represents a defendant in a criminal case has a greater function than merely to determine whether the papers are in order. The trial court's advice on the range of punishment was also misleading. Although a life sentence could be imposed, the ultimate penalty was death. § 559.260, supra. The affirmative response to the court's inquiry as to whether he was "willing to waive having an attorney represent you?" has no weight. Nielsen v. Turner, supra.

We conclude that the record in this case fails to show that the movant intelligently and understandingly rejected the offer of counsel. Therefore, it was not a waiver. Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70.

The order denying the motion to vacate is reversed and the cause remanded.

HOUSER, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., BARDGETT, J., and HESS, Special Judge, concur.

HOLMAN, J., dubitante.